*In re* MARRIAGE OF JANET PAGANO, Petitioner-Appellant, and THOMAS PAGANO, Respondent (Rinella & Rinella, Ltd., Appellee).

Second District No. 2—88—0648

Opinion filed April 13, 1989.

Joanne P. Pitulla, of Chicago, for appellant.

Rinella & Rinella, Ltd., of Chicago (Richard A. Rinella, of counsel), appellee *pro se.*

JUSTICE INGLIS delivered the opinion of the court:

This is an appeal by petitioner, Janet Pagano, from the denial of a section 2—1401 petition to vacate an order for attorney fees awarded to Rinella & Rinella, Ltd. (Rinella). Ill. Rev. Stat. 1985, ch. 110, par. 2—1401 (formerly section 72 of the Civil Practice Act (Ill. Rev. Stat. 1979, ch. 110, par. 72)).

On appeal, petitioner contends that (1) the trial court lacked subject matter jurisdiction to enter fee awards in the absence of any pleading to seek such awards; (2) Rinella did not have standing in the absence of a fee petition; (3) petitioner was entitled to relief pursuant to section 2—1401 of the Code of Civil Procedure; (4) petitioner is entitled to a hearing on the reasonableness and necessity of attorney fees; (5) Rinella had a fiduciary duty to petitioner which prevented it from entering into agreed orders with petitioner for attorney fees; (6) the agreed orders were not final orders which could be recorded as liens against marital property; (7) the agreed orders cannot stand in absence of proof as to the reasonableness of the fees; (8) the agreed orders violated section 2—1301 of the Code of Civil Procedure; and (9) Rinella through its conduct has forfeited its right to collect attorney fees. We reverse and remand.

In her dissolution of marriage proceedings against Thomas Pagano, petitioner was represented by Rinella. On June 2, 1986, during the course of this proceeding, an agreed order was entered in the amount of $20,000 in favor of Rinella and against petitioner. That order provided:

"That Janet B. Pagano, having been advised of her right to a full and complete hearing with respect to her attorney's fees under section 508 of the Illinois Marriage and Dissolution of Marriage Act, and having knowingly waived her right to said hearing, agrees that she shall pay RINELLA & RINELLA,

LTD. the sum of TWENTY THOUSAND ($20,000) DOLLARS as and for additional fees she has already paid said law firm.

2. That judgment is hereby awarded RINELLA & RINELLA against JANET P. PAGANO for said sum and said judgment shall be a lien against her interest in the residence located at 7 South 441 Donwood Drive, Naperville, Illinois, until paid in full."

On May 18, 1987, again during the course of the proceedings and prior to any judgment of dissolution, a second agreed order with substantially the same language was entered in favor of Rinella for $30,000 against Janet B. Pagano. With regard to this order, the trial court queried petitioner as follows:

"THE COURT: On the record, Mrs. Pagano, your attorney has just handed me an order which bears your signature acknowledging that you owe the firm of Rinella & Rinella the sum of $30,000 for their fees in their representation of you in this cause.

MRS. PAGANO: Yes, your Honor.

THE COURT: And you signed that order, is that correct, Mrs. Pagano?

MRS. PAGANO: That's correct."

We note that the first order has never been released or modified. Therefore, after entry of the second order, Rinella had and still has a total of $50,000 in judgments against petitioner.

On July 27, 1987, William J. Stogsdill filed an appearance as additional counsel on behalf of petitioner.

On September 14, 1987, Rinella was granted leave to withdraw as attorney of record for petitioner.

After obtaining the two judgments totalling $50,000, Rinella filed a petition for attorney fees on September 21, 1987. This petition was extensive. It requested fees for two attorneys for a total of 235.10 hours with hourly fees ranging from $125 an hour to $200 an hour. The total fees requested were in the amount of $37,034.15, $700 of which had been paid. Rinella prayed for a judgment of $36,334.15 and for such other relief as equity required. Attached to the petition was a breakdown alleging that various work had been performed and the time spent on such work.

Judgment for dissolution of marriage was entered on September 21, 1987.

On December 2, 1987, a hearing was held on Rinella's petition for attorney fees. Rinella did not present any evidence but stated that it was standing on the order entered on May 18, 1987, and on its peti-

tion for attorney fees. In ruling, the following colloquy occurred:

"THE COURT: Mr. Rinella, you give me no choice other than to state that the Court has previously entered an order and made a finding by the entry of that order relative to the reasonableness of the fees that were agreed to between you and your client for the sum of $30,000.00.

That order was entered in May of 1987. There has been no motion to vacate or set the order aside. The judgment has been entered in this case, is that correct?

MR. MARINACCIO: Yes, your Honor.

THE COURT: There has been no notice to appeal that I am aware of filed in this case, is that correct?

MR. RINELLA: No, there isn't.

THE COURT: And more than 30 days have passed since judgment was entered.

MR. RINELLA: That's correct.

THE COURT: But I can't see, Mr. Rinella, without further testimony or evidence that I can't award additional attorney's fees.

MR. RINELLA: Well, Judge, we are standing on our petition.

THE COURT: The law is quite clear especially in the Second District, Mr. Rinella, that you have to set forth testimony and time sheets and a lot of other things.

MR. RINELLA: We do have that attached to our petition, Judge.

THE COURT: As I said before, I think I am correctly stating the law in the Second District as I understand it is that the mere filing of the petition and standing on that petition is not sufficient cause for the Court to award fees. There is a modification in the Second District.

MR. RINELLA: Well, we would ask leave to put the case on, Judge.

THE COURT: Well, that is what I asked you to begin with.

MR. RINELLA: It is discretionary with you whether or not—

THE COURT: I am not going to grant that. There is an order of Court. That order is to remain in effect."

On December 2, 1987, an order was entered which (1) denied the petition for attorney fees from Thomas Pagano and further stated, "the order entered on May 18, 1987, awarding Rinella & Rinella fees of THIRTY THOUSAND ($30,000) DOLLARS shall be the total fees

awarded to Rinella & Rinella on this cause."

Also on December 2, 1987, William Stogsdill was granted leave to withdraw as attorney of record for petitioner.

On February 11, 1988, petitioner moved pursuant to section 2—1401 to vacate the order entered on May 18, 1987, and to vacate the order entered on December 2, 1987.

On March 7, 1988, Rinella filed a motion to strike the petition to vacate. On March 7, 1988, an order was entered which provided that attorney Joanne Pitulla was denied leave to represent petitioner solely as to the section 2—1401 petition and further provided that leave was granted to withdraw the section 2—1401 petition to vacate.

On April 15, 1988, petitioner filed a section 2—1401 petition to vacate the orders entered on May 30, 1986 (from the description of the order we take this to mean the order of June 2, 1986), May 18, 1987, and December 2, 1987. An affidavit in support of this petition was also filed on April 15, 1987. The section 2—1401 petition alleged, among other things, that on May 14, 1987, just prior to the commencement of trial of the dissolution action, Richard A. Rinella told petitioner that he would not represent her at the trial if she did not immediately agree to pay Rinella $30,000 and sign an order to that effect; that petitioner signed the order because of the threat; that in May 1986, Richard Rinella and Steven Russo, an attorney with the Rinella firm, told petitioner that she had to sign an agreed order for $20,000 in favor of Rinella as security for their fees and further told her that this was normal procedure and that she should not worry about the fees since her husband would be responsible as he had the ability to pay and she did not; that no itemized statements were submitted to petitioner; that no retainer agreement had been executed between petitioner and Rinella; that no hourly rates for the services of Rinella were ever disclosed to petitioner; and that on numerous occasions Richard Rinella and Steven Russo assured petitioner that they would seek the payment of their fees from respondent, Thomas Pagano.

Rinella subsequently filed a motion to strike and dismiss the section 2—1401 petition.

The trial court heard arguments regarding the section 2—1401 petition and thereafter granted Rinella's motion to strike the petition finding that petitioner lacked due diligence.

■ We initially note that Rinella contends that petitioner is attempting to use a section 2—1401 petition as a substitute for appeal. The purpose of a section 2—1401 petition is to bring to the trial court's attention facts not of record which if known by the trial court

at the time judgment was entered would have prevented entry of the judgment. (*In re Petition of Village of Kildeer to Annex Certain Property* (1987), 162 Ill. App. 3d 262, 272, *aff'd* (1988), 124 Ill. 2d 533.) Petitioner's section 2—1401 petition alleges such facts. We therefore find that it is not an attempt to save an appeal whose time had passed.

Petitioner initially contends that the trial court lacked subject matter jurisdiction to enter the agreed orders in the absence of any pleading seeking such awards. Petitioner contends that when awarding fees it must act within the authority vested in it by the Illinois Marriage and Dissolution of Marriage Act. According to petitioner, the trial court lacks jurisdiction to enter a fee award where there is no petition.

In response, Rinella contends that a petition was not required for subject matter jurisdiction because there was a fee petition filed prior to the December 2 order, and that with respect to the agreed order, subject matter jurisdiction arose out of the filing of the initial petition for dissolution of marriage which initially requested attorney fees.

■ A trial court's jurisdiction is found in the Constitution (Ill. Const. 1970, art. VI, §9). (*In re Marriage of Bussey* (1985), 108 Ill. 2d 286, 294.) There, jurisdiction of the circuit courts is extended to all justiciable matters. (Ill. Const. 1970, art. VI, §9; *Bussey*, 108 Ill. 2d at 294.) Section 508 of the Illinois Marriage and Dissolution of Marriage Act provides for the awarding of attorney fees. (Ill. Rev. Stat. 1985, ch. 40, par. 508.) Thus, it is evident that the awarding of attorney fees within a dissolution proceeding is a justiciable matter. The argument that a petition is required for an award of attorney fees goes to procedure and not subject matter jurisdiction. As the court noted in *Bussey*, procedural matters may be corrected in the trial court whereas questions of jurisdiction cannot. (*Bussey*, 108 Ill. 2d at 294-95.) Accordingly, we find that the trial court had subject matter jurisdiction to enter agreed orders, absent a petition for attorney fees.

■■ Although we do not find the filing of a fee petition to be a jurisdictional requirement, we do find it to be a procedural requirement of section 508. In this respect, we agree with the assessment of section 508 stated in *In re Marriage of Pitulla* (1986), 141 Ill. App. 3d 956, 961:

> "While section 508 permits judicial economy by eliminating the need for an attorney to sue his own client in a separate action to obtain a judgment for his attorney fee, we must not lose sight of the fact that it also places an attorney and his client in adversary positions during the course of court proceedings.

> Moreover, the situation presents a circumstance where the client is not represented by counsel, although he or she is being opposed by counsel on a matter in which a judgment may be entered against the client. Plainly, what is permitted by section 508 is unique in, and is otherwise inimical to, the legal profession."

Because section 508 puts clients in a position where they are effectively before the court without representation, we are of the opinion that precautions must be taken to ensure that any rights of the client are not relinquished unknowingly and that any resulting attorney fee is fair. At a minimum, we find that prior to entering an award of attorney fees on behalf of an attorney against his client, the trial court must be presented with a petition for attorney fees and an itemization of the billing including the hourly cost, the time spent on the case, and an itemization of the tasks performed. In being presented with such a petition, the trial court will have a basis for ensuring that the fees awarded are fair. In absence of a petition for attorney fees, we find that entry of the agreed orders on June 2, 1986, and May 18, 1987, was error. We do not, however, reverse on this particular error as this is an appeal from the denial of a section 2—1401 petition, and the lack of a petition for attorney fees was procedural and, standing alone, not a basis for granting a section 2—1401 petition.

Petitioner next contends that Rinella did not have standing since the agreed orders were not entered pursuant to section 508. Petitioner reasons that an attorney only becomes a party to a dissolution for the purpose of seeking fees pursuant to section 508, that fees were not awarded pursuant to section 508, and, thus, Rinella had no standing.

■ Attorneys for litigants in a dissolution proceeding are considered as parties in interest in an action for attorney fees, and the attorney has standing in such cases to pursue an action himself for fees. (*In re Marriage of Baltzer* (1986), 150 Ill. App. 3d 890, 893.) In the instant case, the agreed orders themselves purport to be entered pursuant to section 508 of the Illinois Marriage and Dissolution of Marriage Act. Thus, we find that Rinella had standing.

The next two arguments of petitioner will be considered together since they are interrelated and their outcomes depend upon one another. These contentions are (1) that the trial court improperly denied petitioner's section 2—1401 petition without an evidentiary hearing; and (2) that Rinella's fiduciary duty to petitioner prevented it from entering into a valid agreed order for attorney fees.

■ In addressing the above issues, we first consider the attorney-

client relationship. The relationship between an attorney and client is fiduciary in nature. (*Durr v. Beatty* (1986), 142 Ill. App. 3d 443, 449.) As noted by our supreme court, as the attorney-client relationship grows, a sense of trust develops which can be abused by an unscrupulous attorney. (*Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 465.) Therefore, where an attorney-client relationship exists, the utmost good faith must be exercised by the attorney in all dealings with the client (*Goranson v. Solomonson* (1940), 304 Ill. App. 80, 82-83), and all transactions arising out of an attorney-client relationship will be subject to the closest scrutiny (*Durr*, 142 Ill. App. 3d at 449). With these precepts in mind, the specific issues may now be addressed.

■■ A section 2—1401 petition must set forth facts showing the existence of a meritorious defense and the exercise of due diligence in presenting both a defense to the original action and the petition to vacate. (*Smith v. Airoom, Inc.* (1986), 114 Ill. 2d 209, 221.) However, "[a] showing of due diligence is not required when it is clear from all the circumstances that a party has procured an unconscionable advantage through the extraordinary use of a court process." (*Hiram Walker Distributing Co. v. Williams* (1981), 99 Ill. App. 3d 878, 881.) In determining whether a section 2—1401 petition states grounds for relief, all well-pleaded facts in the petition must be taken as true. *In re Petition of Village of Kildeer*, 162 Ill. App. 3d at 274.

In the instant case, there are no allegations in the petition to show that petitioner acted with due diligence. Nonetheless, we find that the record indicates that petitioner was diligent.

■■ In determining whether due diligence was exhibited, the court must be mindful of the facts and circumstances peculiar to the case including the conduct of the parties. *In re Petition of Village of Kildeer to Annex Certain Territory* (1988), 124 Ill. 2d 533, 548.

■■ Because there is a fiduciary relationship between an attorney and his client (*Durr*, 142 Ill. App. 3d at 449), we believe that under the circumstances in this case, petitioner had no reason to take action against her attorney while that relationship still existed. At the time of the relationship, it may be presumed that the client looks to the attorney for guidance relating to legal affairs. It cannot be expected that an attorney will advise a client to act swiftly against him. It would also ask too much of a client to expect the client to take action against her attorney while still under the attorney's guidance. Thus, in the instant case, whether petitioner exhibited due diligence should not be measured from entry of the May 18 order, but from the time when the attorney-client relationship between Rinella and petitioner

ceased which was on September 14, 1987. Yet, on September 21, 1987, shortly after the relationship ceased, Rinella petitioned for attorney fees, thereby putting the question at issue once again. There was then no determination on that petition until December 2, 1987. Since attorney fees were at issue until this time, we find that it would have appeared to petitioner that there was no need to raise the issue of attorney fees or file a section 2—1401 petition since the attorney fees had been put at issue by Rinella. Moreover, the May 18 order was not final and appealable, as the judgment for dissolution was not entered until September 21, 1987. Thus, under the circumstances, failure to set forth the allegations presented in the section 2—1401 petition on or prior to December 2, 1987, cannot be construed as lack of due diligence by petitioner. Consequently, we find that whether petitioner exhibited due diligence must be measured from December 2, 1987.

In the instant case, petitioner had substitute counsel at the hearing on December 2, 1987, and at the end of the hearing, that attorney was granted leave to withdraw. Petitioner was thus left without counsel.

It is not clear from the record when present counsel was retained. However, petitioner's original section 2—1401 petition was filed on February 11, 1988. Leave to withdraw this petition was granted on March 7, 1988, and a new section 2—1401 petition was filed on April 15, 1988.

We find that in light of the fact that petitioner was left without an attorney as of December 2, 1987, her original filing of a section 2—1401 petition on February 11 (less than three months from the order of December 2, 1987) and her subsequent filing of another section 2—1401 petition on April 15, 1988, showed due diligence. (See *Chastain v. Chastain* (1986), 149 Ill. App. 3d 579, 582 (filing of section 2—1401 motion within approximately three months showed due diligence where the petitioner changed attorneys before filing a section 2—1401 petition).) We thus find that the trial court abused its discretion in holding that petitioner had not shown due diligence. Yet, even if we did not find that petitioner exhibited due diligence, we would find that the court abused its discretion.

Because the section 2—1401 petition alleges impropriety by an attorney, which the courts should be peculiarly vigilant in guarding against (see *Franciscan Sisters*, 95 Ill. 2d at 464 (courts closely scrutinize allegations involving attorneys' conduct with their clients)), a section 2—1401 petition hearing should have been granted even in the absence of due diligence. (See *Smith*, 114 Ill. 2d at 225 (section 2—

1401 involves the equitable powers of the court); *Hiram Walker Distributing Co.*, 99 Ill. App. 3d at 881 (due diligence is not required where a party has procured a unconscionable advantage through the extraordinary use of a court process).) In addition to the allegations of impropriety, the record before the trial court indicated that Rinella had obtained an unconscionable advantage as it had obtained $50,000 in judgments against petitioner when its petition alleged that Rinella had earned only $37,034.15.

The next question before us is whether petitioner had a meritorious defense. As stated earlier in this opinion, the purpose of section 2—1401 is to bring to the trial court's attention facts not of record which, if known by the trial court at the time judgment was entered, would have prevented entry of the judgment. (*In re Petition of Village of Kildeer*, 162 Ill. App. 3d at 272.) A motion to dismiss a section 2—1401 petition should not be granted unless it appears from the petition that no set of facts would entitle petitioner to relief. (See *Ostendorf v. International Harvester Co.* (1982), 89 Ill. 2d 273, 280.) This question turns on the propriety of the agreed order entered on May 19, 1987, since the trial court based its order of December 2, 1987, on the May order. In this respect, petitioner's main contention is that the fiduciary duty of Rinella prevented it from entering into a valid agreed order for attorney fees.

Where a transaction is entered into between an attorney and his client during the existence of that relationship and the attorney benefits from the transaction, it is presumed that the attorney exercised undue influence. (*Klaskin v. Klepak* (1989), 126 Ill. 2d 376, 386; see also *In re Marriage of Bennett* (1985), 131 Ill. App. 3d 1050, 1056 (a fee agreement which is modified to the attorney's advantage during the attorney-client relationship is presumptively fraudulent).) Although the burden of persuasion is upon contestant (the client) to establish undue influence (*Franciscan Sisters*, 95 Ill. 2d at 464), the burden is upon the attorney to come forward with clear and convincing evidence that such contract was fair, equitable, just, and did not come about from undue influence. (*Klaskin*, 126 Ill. 2d at 386; *Franciscan Sisters*, 95 Ill. 2d at 465.) It must also be shown that the client had a full understanding of the facts and their legal consequences. (*Drake v. Becker* (1973), 14 Ill. App. 3d 690, 694.) In the absence of clear and convincing evidence to rebut the presumption, the presumption of undue influence prevails. (See *Franciscan Sisters*, 95 Ill. 2d at 463.) However, where clear and convincing proof is presented, the presumption vanishes (95 Ill. 2d at 462), and it is then for the trier of fact to determine whether there actually was undue influence (see 95 Ill. 2d at 466).

■■ It is evident from *Franciscan Sisters* that the attorney-client relationship does not prevent an attorney from ever benefitting from a client. *Franciscan Sisters* indicates that the agreed orders were not void *ab initio*, as petitioner would have this court believe, but rather presumptively fraudulent. An attorney is not prohibited from dealing with his client so long as such dealings are open, fair, and honest. See *In re Saladino* (1978), 71 Ill. 2d 263, 270.

■■ Because section 2—1401 petitions are a proper means for setting aside consent judgments obtained by fraud or coercion (see *Thompson v. Thompson* (1980), 91 Ill. App. 3d 943, 945), and because agreements between an attorney and client entered into during the attorney-client relationship are presumptively the product of undue influence (*Klaskin*, 126 Ill. 2d at 386), we find that the section 2—1401 petition to set aside the agreed orders between petitioner and her attorney, Rinella, should have been granted.

In making this finding, we recognize that, prior to entry of the agreed order in the instant case, the trial court questioned petitioner as to whether she had signed the agreement. However, no inquiry was made as to whether she signed it voluntarily. Even had she said it was signed voluntarily, such a fact would not defeat her section 2—1401 petition. At that time, petitioner was being represented by Rinella, and, according to her petition, which must be taken as true (*In re Petition of Kildeer*, 162 Ill. App. 3d at 274), she was under the influence of coercion. According to her petition, on May 14, 1987, just before entering the courtroom for her trial, Richard Rinella told petitioner that she had to sign the agreed order or he would not represent her at trial. We find this to be a matter not before the court which would have prevented the order from being entered. This court has previously recognized that a proveup hearing which would lead to a final judgment is the most critical stage of a dissolution proceeding and that a client is in no position to oppose her attorney at that time. (See *In re Marriage of Bennett* (1985), 131 Ill. App. 3d 1050, 1055; see also *Drake*, 14 Ill. App. 3d at 697 (it is improper for an attorney, as litigation is reaching its climax, to burden his client with the choice of paying an extra fee or terminating their relationship).) Moreover, the record indicates that two "agreed orders" had been entered at that time: one for $20,000 and the other for $30,000, for a total of $50,000. In light of the fact that Rinella's fee petition and the attached statement showed that Rinella was only entitled to $37,034.15, $700 of which had been paid, it was evident from Rinella's own pleadings that entry of the two agreed orders totaling $50,000 was improper. It is notable that with regard to the first order of June 2,

1986, for $20,000, Rinella claims that the validity of the order is not at bar and is not relevant to the hearing of December 2, 1987. According to Rinella, the order of June 2, 1986, is only relevant in that in it petitioner acknowledged that she owed Rinella $20,000 and that the order advised her of her rights to a hearing. However, as we have previously noted, the first order is relevant because it was never released or modified. Consequently, we find that petitioner alleged sufficient facts in her section 2—1401 petition to require a hearing, and the trial court's order striking petitioner's section 2—1401 petition was an abuse of discretion.

Petitioner further contends that fees were improperly awarded because there was no hearing on the reasonableness of the fees. In response, Rinella contends that petitioner waived her right to a hearing. However, petitioner contends that a party cannot waive her right to a hearing and in support thereof cites *In re Marriage of Pitulla* (1986), 141 Ill. App. 3d 956.

*Pitulla* was another case in which Rinella sought attorney fees. In that case, no written retainer agreement was prepared and no attorney fee amount was stated. (141 Ill. App. 3d at 958.) Richard Rinella prepared a settlement agreement which provided that Rinella was to receive $8,500 as his fee in addition to $1,500 already paid as a retainer. (141 Ill. App. 3d at 958.) There was a prove up after which Pitulla requested an itemized bill from Rinella. (141 Ill. App. 3d at 958.) Rinella refused the request and told Pitulla that the judgment for dissolution would not be entered until she paid Rinella's fee in full. (141 Ill. App. 3d at 958.) Pitulla thereafter paid the fee and later filed a section 2—1401 petition, which was denied.

In addressing the case, the court noted that section 508 is unique in that it places the attorney and the client in adversary roles during the course of the proceedings. (141 Ill. App. 3d at 961.) The court went on to state:

> "As a result, we must be circumspect that the attorney's right under the statute does not in any way encroach upon the rights of his client. In this regard, we must make sure that the client does not waive any right by his or her own admission or inaction." (141 Ill. App. 3d at 961.)

The court concluded that the client's right to an itemized statement of fees was not waived because the attorney fee was included in the judgment dissolving the marriage, or because the client signed the marital settlement agreement which was incorporated in the judgment for dissolution, or because the client assented to the amount of the attorney fee. (141 Ill. App. 3d at 961.) The court further found

that if the attorney refuses to provide the client with an itemized statement of services, the client has a right to an evidentiary hearing to determine the reasonableness of the attorney fees pursuant to a section 2—1401 petition. 141 Ill. App. 3d 956.

 As stated earlier in this opinion, we agree with the assessment of section 508 made by the court in *Pitulla* and accordingly have found that the granting of fees pursuant to section 508 requires the filing of a petition. However, we find that a client may waive her right to a hearing under section 508.

In *In re Marriage of Lord* (1984), 125 Ill. App. 3d 1, 6-7, this court held that the right to a hearing on attorney fees had been waived. The court stated:

> "While Robert has questioned the portion of the court's order granting Arlene $7,200 from a $17,209 marital savings account, the balance to be divided equally between the parties' attorneys for attorney fees, we find no error. In effect, the ruling was one which required each spouse to pay the fees for his or her own attorney. There is no showing on the record before us that the fees were not reasonable. Moreover, Robert has waived his right to a hearing on attorney fees, as there is no indication that he ever requested such a hearing before the trial court." 125 Ill. App. 3d at 6-7.

In *In re Marriage of Bennett* (131 Ill. App. 3d at 1054), this court followed its holding in *Lord*, stating:

> "Where the trial court orders a spouse to pay the fees of his or her own attorney and there is no showing on the record that this fee was unreasonable and where the party never requested a hearing before the trial court, an objection to the fee is waived." 131 Ill. App. 3d at 1054.

However, this court found that the trial court abused its discretion in awarding attorney fees where the trial court had no information upon which to base a finding of reasonableness and necessity. (131 Ill. App. 3d at 1054.) This court further found that the wife's failure to object to the fee and her failure to request a special hearing did not constitute waiver because her attorney acknowledged that there had been no notice given to her of the attorney's intention to seek entry of an order for attorney fees. (131 Ill. App. 3d at 1054-55.) In *Bennett*, the amount of the attorney fees was incorporated in the settlement agreement and judgment of dissolution. 131 Ill. App. 3d at 1052.

 Both *Bennett* and *Lord* indicate that a party can waive her right to a hearing under section 508 (see also *In re Marriage of*

*Brand* (1984), 123 Ill. App. 3d 1047, 1051), and we agree. Nevertheless, waiver is a limitation on the parties and not the court. (*Bennett*, 131 Ill. App. 3d at 1055.) Where it would be unjust to enforce orders as entered, a reviewing court may consider the issues despite the fact that they have been waived. (See 131 Ill. App. 3d at 1055.) Both *Bennett* and *Lord* indicate that if the record shows that the fees are unreasonable waiver should be disregarded. (See *Bennett*, 131 Ill. App. 3d at 1054; *Lord*, 125 Ill. App. 3d at 6.) We also note that Rule 2—106 of the Code of Professional Responsibility provides that a lawyer shall not collect an excessive fee and that a fee is excessive when a "lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee." (107 Ill. 2d R. 2—106.) Therefore, as a matter of public policy, an attorney should not be able to retain a fee that is excessive. Any application of waiver to the contrary would thus be violative of public policy.

■■■ As we have noted before, two agreed orders were entered in the present case for a total of $50,000 even though Rinella's own petition for fees indicated that only $37,034.15 had been earned. While it may have been the intent of Rinella to have the second agreed order supersede the first, that is not clear from the second order. Consequently, we find that both orders must be vacated since the two combined were excessive. Additionally, we find that since the order of December 2, 1987, was based on the second agreed order it too must be vacated. Consequently, we find that the section 2—1401 petition should have been granted. Thus, we reverse and remand for a hearing on attorney fees pursuant to section 508.

Because of our foregoing disposition, we find it unnecessary to address petitioner's contention that the agreed orders violated section 2—1301 of the Code of Civil Procedure and were not final and thus could not be liens. We further find that it would be premature for us to address petitioner's contention that Rinella forfeited its fees because it breached its fiduciary duty since no such factual determination has been made as of yet.

■■■ Finally, we find it incumbent upon ourselves to recommend that similar orders between attorneys and their clients, especially those relating to attorney fees, be avoided in the future. In *Franciscan Sisters*, our supreme court noted it is usually unnecessary for lawyers to prepare documents under which they benefit, as there is almost always a third party available who can intervene and provide a disinterested perspective. (*Franciscan Sisters*, 95 Ill. 2d at 465.) This is certainly the case where the issue is attorney fees in actions for dissolution of marriage, as section 508 provides a procedure whereby a

court is to act as the disinterested party. (See Ill. Rev. Stat. 1985, ch. 40, par. 508.) Moreover, the fact that agreements entered into between an attorney and his client during the course of the attorney-client relationship are presumed to be the product of undue influence means that such agreements are easily subject to attack. Thus, rather than being efficient and expedient, as are most agreed orders, they appear to invite unneeded proceedings. In closing, we also note that attorneys should make clients aware of their hourly fees at the outset. It was stated in *Pitulla* that Rinella did not so inform the client (*Pitulla*, 141 Ill. App. 3d at 958), and in the present case a similar allegation has been made. The effect of failure to so inform a client is not presently at issue, and we therefore do not address it.

For the foregoing reasons, we reverse the decision of the trial court and remand for a hearing on attorney fees pursuant to section 508 of the Illinois Marriage and Dissolution of Marriage Act (Ill. Rev. Stat. 1987, ch. 40, par. 508).

Reversed and remanded.

LINDBERG and REINHARD, JJ., concur.